UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARCY M. MILLIDGE,

               Plaintiff,

   -vs-

CAROLYN W. COLVIN, Commissioner of
Social Security,

               Defendant.

**DECISION and ORDER**
**No. 12-CV-0288(MAT)**

---

## I.   Introduction

Represented by counsel, Marcy M. Millidge ("Plaintiff"), brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner")[1] denying her application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II.   Procedural History

Plaintiff protectively applied for SSI and Child's Insurance Benefits based on disability on July 13, 2007, alleging that she was disabled commencing on the date of her birth, July 31, 1989, due to learning disability and adjustment disorder. T. 17, 88-90, 95.[2] Those applications were denied on October 3, 2007. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). T. 38-39. Plaintiff,

---

[1] Carolyn M. Colvin is automatically substituted for the previously named Defendant Michael Astrue pursuant to Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend the caption accordingly.

[2] References to "T.__" refer to the pages of the administrative transcript, submitted as a separately bound exhibit in this action.

represented by counsel, appeared before ALJ William Pietz on October 20, 2009. T. 242-71. Plaintiff, her foster mother, her treating social worker, and an independent Vocational Expert ("VE") testified at the hearing. Id.

On November 17, 2009, the ALJ issued a written decision finding that Plaintiff was not disabled and denying her claims for SSI and Child's Insurance Benefits. T. 17-26. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 9, 2012. T. 4-6. This action followed. Dkt. #1.

Now pending before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##13, 15. For the reasons that follow, the Commissioner's motion is granted, and Plaintiff's motion is denied.

## III. Factual Background

### A. Medical Evidence

#### 1. Plaintiff's Providers

Plaintiff was examined by Robyn Steinacher, D.O., at the West Seneca Health Center on December 6, 2005, when Plaintiff was 16 years-old. T. 175-77. Dr. Steinacher reported that Plaintiff had become more "moody" and "flighty" since coming off Zoloft, anti-depressant, with a decreased attention span, degradation in personal hygiene, and weight gain. T. 21, 175. Dr. Steinacher recommended that Plaintiff see a psychiatrist. T. 176.

During a subsequent visit in July, 2006, Dr. Steinacher assessed Plaintiff has having depression and attention deficit disorder ("ADD"),

-2-

but noted that Plaintiff had re-started medication and was doing well on a combination of Zoloft and Adderall. Specifically, her moods had calmed down, she became more focused, lost weight, and was doing better in school. T. 21, 173. Plaintiff reported no side effects. Id.

West Seneca Health Center treatment notes from March, 2007 show that Plaintiff had again discontinued the medications of Zoloft and Adderall. T. 170-71. Plaintiff's foster mother reported a few instances of Plaintiff "lashing out" during her menses, with no other issues. Id. Sleep symptoms and depressive symptoms were denied by Plaintiff, and there were no behavioral problems at home or school. Id.

In October, 2009, Plaintiff was seen by social worker William R. Oldfield, LCSW, who provided a Clinical Diagnostic Evaluation. T. 226-236. Therein, Oldfield diagnosed Plaintiff with adult attention deficit hyperactive disorder ("ADHD"), chronic dysthymic disorder (depression), generalized anxiety, learning disability, and Asperger's disorder. T. 235. He stated that Plaintiff had difficulty sustaining attention and completing tasks, displayed slow cognition and work pace, mental fatigue, anxiety and depression, inability to make and sustain friendships, poor personal hygiene, compulsive eating, excessive worry, and inability to manage finances. T. 227. Oldfield opined that Plaintiff would not be able to support herself or obtain gainful employment. T. 235.

### 2.   Consultative Examinations

Plaintiff underwent a consultative psychiatric evaluation and intelligence evaluation by Thomas Ryan, Ph.D., on September 24, 2007. T. 184-87. Plaintiff reported having normal sleep patterns, normal appetite, and no problems with depression. Id. She acknowledged some

irritability, but reported no social withdrawal and no thoughts of self-harm, and no unusual difficulties with memory, attention, or concentration. Id. Dr. Ryan observed that Plaintiff appeared nervous and restless, engaged in hand-wringing, but demonstrated otherwise normal motor behavior. T. 180-81, 185.   Her psychiatric evaluation was unremarkable, with the exception of exhibiting some anxiety. She could not perform two-step problems. T. 181-82.

In connection with her intelligence evaluation, Plaintiff scored 82 on the Wide Range Achievement Test, Third Edition ("WRAT-III"), the equivalent of a sixth-grade score. T. 185. On the Wechsler Adult Intelligence Scale ("WAIS-III"), Plaintiff scored 81 (verbal IQ), 76 (performance scale IQ), and 77 (full scale IQ). Id. Plaintiff's cognitive functioning was in the borderline range, with general fund of information in the low end of average range. T. 182, 186. Dr. Ryan opined that Plaintiff could follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, and learn new tasks at a slow rate. T. 182, 186. He further concluded that she might have difficulty with complex tasks, that she could generally make adequate decisions, but would have some difficulty dealing with stress. Id. Plaintiff's diagnosis was adjustment disorder with anxiety and borderline intellectual functioning with a "fair" prognosis in anxiety and "guarded" with respect to her intellectual functioning. T. 182-83, 187.

B.    **Non-medical Evidence**

1.    **School Records**

In October, 1998, when Plaintiff entered the Lancaster school district, school psychologist M. Carole Daley conducted a psycho-educational evaluation of Plaintiff and determined that her overall cognitive abilities were in the upper limits of the "mildly retarded" range. T. 151-54. Daley recommended an Individualized Education Program ("IEP") and daily resource room services.

A triennial review was conducted in the academic year 2001-2001. Plaintiff had been placed in a special education "modified inclusion" program. T. 149. Her overall cognitive abilities fell within the "mildly mentally retarded" range. Id. Plaintiff needed guidance to understand materials she read, as well as additional time to complete tasks. Id. Daley reported that Plaintiff possessed a good attention span and was able to remain on task most of the time.

On September 25, 2007, Plaintiff's special education teacher completed a teacher questionnaire. T. 113-120. Plaintiff was in the 12th grade, was at a middle school reading level and a high school math level, and had achieved a score of 67% on her Regents examination for English. T. 113. Plaintiff struggled with attention issues, but was well-organized and completed work independently. T. 114. She would ask for assistance when needed, so long as she was comfortable with the teacher. Id. Plaintiff was rated as having "serious problems" in the areas of "understanding and participating in class discussion" and "providing organized oral explanations and adequate descriptions." T. 114.

-5-

An IEP from the 2007-08 school year reveals that Plaintiff was participating in all 12th grade core classes, received support from a consultant teacher, and required testing accommodations. T. 137. Though her cognitive scores were in the low range, she compensated well and was achieving passing grades in all of her classes. T. 138. Plaintiff was described as a hard worker that typically turned in work on time and asked for help when necessary. T. 139. She held a part-time job delivering newspapers during the school year. Id. The IEP included an observation that Plaintiff could be talkative with adults and peers once comfortable, and had friends with whom she enjoyed interacting. T. 138.

A Psychological Evaluation completed in February, 2008, revealed mostly low-average scores with regard to her intellectual evaluation and a full-scale IQ score of 81 on the WAIS-III test. T. 144-45. Based on this and other scores, the school psychologist noted that Plaintiff's overall cognitive ability was at the bottom of the low-average range, and verbal abilities were below average. T. 148. Despite Plaintiff's low cognitive scores, she could follow three-part instructions, and possessed domestic living skills, such as washing clothes and preparing food, in the average range. T. 147.

### 2.    Hearing Testimony

Plaintiff testified that she graduated from high school in a special education program, and was enrolled at Erie Community College, majoring in early childhood education. T. 247. Though she had completed a year-and-a-half of college, her first year consisted of remedial classes. Id. She told the ALJ that she was doing clinical work with children at a day care center. T. 248. She was also working part-time, two days a week, as

a dishwasher in a restaurant. T. 248-49. Plaintiff testified to getting along well with others at school and work, and to having no disciplinary issues. T. 250-51. She also stated that had not taken any medication since stopping Adderall in 2006. T. 251.

Plaintiff's foster mother testified that Plaintiff had been working as a dishwasher for the past year, and that Plaintiff generally worked one or two days per week. T. 253-54. She expressed concern over Plaintiff's poor hygiene habits, difficulty with social interactions, and difficulty making independent judgments. T. 256-58.

Mr. Oldfield, Plaintiff's therapist, told the ALJ about an occasion during which he brought Plaintiff to his office to help his secretary with clerical work. T. 260-61. He described Plaintiff's struggle with answering the phones, interacting with others, and forgetting and misplacing things, even with guidance. Id. He stated that she required constant repetitive instructions in order to complete basic clerical tasks. Id. Based on his observations of Plaintiff, Oldfield opined that Plaintiff could perform a simple, repetitive job as a dishwasher on a part-time basis, but would not be able to work at any job every day for more than a few hours per day. T. 260-61. He testified that Plaintiff would experience mental fatigue, and that she would require a "very nice boss who would be very understanding and very patient," otherwise she could be fired "quite easily." T. 261.

Finally, VE Jay Steinbrenner testified at Plaintiff's hearing. The ALJ posed a hypothetical involving an individual who was Plaintiff's age with the same education and past work experience, who was limited to jobs involving simple instructions, not dealing with the public, and only

occasionally dealing with supervisors and coworkers. T. 266. The VE responded that the hypothetical individual could perform the jobs of dishwasher/kitchen porter (the same job that Plaintiff was already performing part-time), and laundry worker, both of which were repetitive and routine. T. 266-67.

## IV.   The ALJ's Decision

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the SSA, see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found Plaintiff suffered from the severe impairment of borderline intellectual functioning, and that it did not meet or equal the Listings set forth at 20 C.F.R. 404, Subpart P, Appendix 1. T. 19-20. Because Plaintiff could not be found disabled at the third step, the ALJ proceeded to determine that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple instructions, not dealing with the public and only occasionally dealing with supervisors and co-workers. T. 21. Relying on vocational expert testimony, the ALJ concluded that Plaintiff was not disabled as she was capable of performing work existing in significant numbers in the national economy, such as laundry worker or kitchen porter.[3] T. 25.

---

[3] For purposes of the Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).

V.    **General Legal Principles**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003);

see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## VI. Discussion

### A. Combined Impairments

Plaintiff first contends that the ALJ committed reversible error in failing to consider the effect of Plaintiff's combined impairments on her ability to sustain work on a regular and continuing basis as required by Social Security Ruling ("SSR") 96-8p. Pl. Mem. (Dkt. #14) at 20-22.

"To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." Stanton v. Astrue, 2009 WL 1940539, *9 (N.D.N.Y. 2009), aff'd, 380 F. App'x 231 (2d Cir. 2010); see also SSR 96-8p, 1996 WL 374184 (SSA July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

Plaintiff cites to Burgos v. Astrue, No. 09-cv-1216, 2010 WL 3829108 (D. Conn. Sept. 22, 2010), for the proposition that an ALJ's failure to

make specific findings as to the severity and combined effect of all of a plaintiff's impairments constitutes reversible error. Burgos is inapposite. There, the district court remanded the Commissioner's decision where the ALJ made no mention at all of several of plaintiff's alleged impairments, and the court was unable to determine whether or not the ALJ evaluated the combined effect of the plaintiff's impairments as a whole on her ability to work. Here, while the ALJ found Plaintiff's borderline intellectual functioning to be her only severe impairment, his decision makes clear that he considered all of her non-severe impairments in determining her RFC.

The ALJ first considered the treatment notes from West Seneca Health Center and noted Plaintiff's symptoms of depression, mood changes, and past diagnosis of ADD/ADHD. T. 21. Those notes indicate that Plaintiff demonstrated an improvement in mood and ability to focus with a combination of Zoloft and Adderall, and later responded well after discontinuing medication altogether in 2007. T. 21-22. He then considered Plaintiff's school records, which addressed her social and emotional impediments ("she is able to focus during classes and almost always has her homework complete and turned in on time."). T. 22. The ALJ went on to discuss the consultative examination by Dr. Ryan, which noted Plaintiff's motor behavior ("mildly restless"), as well as her attention and concentration skills ("good"). T. 22. He noted Dr. Ryan's additional diagnosis of adjustment disorder with anxiety. Id. Finally, the ALJ incorporated these findings into his hypothetical posed to the VE, which involved limitations of simple instructions, dealing with supervisors and

co-workers only occasionally, and not dealing with the public at all. T. 21.

It is therefore apparent from the record that the ALJ properly considered all of Plaintiff's alleged impairments, including ADHD, depression, and anxiety, in determining Plaintiff's RFC.

**B.   Lay Witness Testimony**

Plaintiff next contends that the ALJ failed to properly evaluate the testimony of Plaintiff's foster mother and treating licensed social worker, Mr. Oldfield. Pl. Mem. at 22-25. Both individuals testified, somewhat anecdotally, that Plaintiff would be unable to work in excess of 12 hours per week. T. 253-54, 260-62. According to Plaintiff, the ALJ did not acknowledge this testimony or weigh its probative value in his written decision. Pl. Mem. at 22.

An ALJ's determination that a "[lay] witness is not credible must ... be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). The ALJ's failure to discuss such evidence can rise to the level of plain error where the lay testimony is consistent with the record evidence. McArthur v. Comm'r of Soc. Sec., No. 06-CV-860, 2008 WL 4866049, at *10 (N.D.N.Y. Nov. 7, 2008).   Such error is harmless, however, where "application of the correct legal principles to the record could lead to only one conclusion." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

The oral testimony of Plaintiff's foster mother essentially reiterated Mr. Oldfield's written opinion that due to Plaintiff's

impairments, should would be unlikely to maintain the pace required to support herself with full-time work. T. 227, 236. The only additional information she provided was that Plaintiff "gets very tired" at her current job, which was corroborated by Mr. Oldfield's hearing testimony. T. 254, 260.   Plaintiff's foster mother was unable to state whether Plaintiff would be more fatigued than any other able-bodied employee performing the same job. T. 254.  Though the ALJ did not acknowledge the testimony in his written decision, an explicit discussion of said testimony was not warranted. Because the testimony added little to the record and would not have changed the outcome of the case, the error is deemed harmless. <u>See</u> <u>Zabala v. Astrue</u>, 595 F.3d 402, 410 (2d Cir. 2010) (failure to address evidence is harmless error if consideration of the evidence would not have changed the ALJ's ultimate conclusion); <u>accord</u>, <u>McKinstry v. Astrue</u>, No. 05-10-cv-319, 2012 WL 619112, at *6 (D. Vt. Feb. 23, 2012) (finding harmless error where opinion letter not considered by ALJ provided little information, did not discuss limitations during relevant period, was inconsistent with other evidence, and was otherwise not more favorable to claimant).

    To the extent Plaintiff contends that the ALJ erred in discounting the opinion of Mr. Oldfield because he is a social worker, Pl. Mem. At 24, such an argument is also unavailing.

    While an ALJ is free to conclude that the opinion of a licensed social worker is not entitled to any weight, he has a duty to explain that decision in light of the Commissioner's rulings at SSR 06-03p. That directive provides that an ALJ "may use evidence from 'other sources' ... to show the severity of the individual's impairment(s) and how it affects

-13-

the individual's ability to function. These sources include, but are not limited to ... licensed clinical social workers[.]" Further,

> [M]edical sources ... such as ... licensed clinical social workers [ ] have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p, 2006 WL 2329939, at *2, *3 (SSA Aug. 9, 2006). SSR 06-03p directs ALJs to use the same factors for the evaluation of the opinions of "acceptable medical sources" to evaluate the opinions of "medical sources who are not 'acceptable medical sources,'" such as licensed social workers. Id. at *4; see also 20 C.F.R. § 404.1527(d) (Commissioner's regulations on the weighing of the medical opinions of treating sources).

The ALJ evaluated Mr. Oldfield's opinion properly, applying the factors set forth in 20 C.F.R. § 404.1527(d) in making his determination that the social worker's opinion should be afforded little weight. In his decision, the ALJ stated that Oldfield's opinion was "somewhat contradictory to the bulk of the medical evidence of record," and "without substantial report from the other evidence of record." T. 25. The ALJ evaluated Oldfield's opinion and did not simply discount it for the sole reason that Oldfield is a social worker. Rather, he noted contradictions between Oldfield's conclusions and the facts set forth in Plaintiff's school records, medical records, and other psychiatric assessments, including the fact that aside from Oldfield's assessment, there was no diagnosis of Asperger's Syndrome elsewhere in the record.

-14-

T. 21-25.  The ALJ's analysis therefore conforms with the dictates of 20 C.F.R. § 404.1527(d).  Compare Canales v. Comm'r of Soc. Sec., 698 F.Supp.2d 335 (E.D.N.Y. 2010) (remanding where ALJ disregarded opinion simply because it was the opinion of a social worker, not on account of its content or whether it conformed with the other evidence in the record), with Figueroa v. Astrue, No. 04-CV-7805, 2009 WL 4496048, at *12 (S.D.N.Y. Dec. 3, 2009) (concluding SSR 06-03p satisfied where ALJ explicitly considered report from treating non-physician and rejected it as "contradicted by the opinion of the consultative physician, who is an acceptable medical source [and] by the claimant's conservative course of treatment, by the objective medical findings of record, and by the claimant's wide range of daily activities").

Accordingly, the Court finds that the ALJ properly evaluated Mr. Oldfield's opinion and that his findings are supported by substantial evidence.

**VII.  Conclusion**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. #13) is denied, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. #15) is granted. The Complaint is dismissed in its entirety with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**


                                    S/Michael A. Telesca
                                    HONORABLE MICHAEL A. TELESCA
                                    United States District Judge

DATED:      August 14, 2014
            Rochester, New York